IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : |
| | : NO. 95-73-1 |
| CHARLES PERNELL RIDDICK, SR. | : |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                        **January 14, 2022**

Defendant Charles Pernell Riddick, Sr. moves for reduction of his life sentence and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Court finds Riddick has not satisfied the criteria necessary to warrant granting him the relief sought, and the motion will therefore be denied.

**CASE HISTORY**

On May 24, 1995, Riddick was convicted of organizing and running a conspiracy to smuggle cocaine and marijuana into Lehigh Valley Prison, where he was then serving a state sentence for his eighth conviction on state drug charges. In organizing this conspiracy, Riddick recruited a number of others, including his girlfriend, his son, his son's girlfriend, four other inmates, and two prison guards. The conspiracy operated from July 1988 until March 1994 and resulted in the distribution of at least 38 kilograms of marijuana and 15 kilograms of cocaine. Finding Riddick's actions had the effect of completely corrupting and destroying the purposes of incarceration and placing the inmate population under Riddick's own control, the late Judge Franklin Van Antwerpen, to whom the case was then assigned, determined a life sentence to be appropriate and sentenced Riddick accordingly. Riddick's conviction and sentence were affirmed

1

by the Third Circuit in  1996.  *United States v. Riddick*, 100 F.3d 949 (3d Cir. 1996).  Since that time, Riddick has filed several motions seeking post-conviction relief under 28 U.S.C. § 2255 and 18 U.S.C. § 3582(c)(2).  All of those motions have been denied, and the denials have been affirmed by the Court of Appeals.

In this motion, Riddick asserts early release is warranted because of the grave threat posed to his life by the continuing COVID-19 pandemic.  Riddick notes he suffers from a number of serious, chronic medical conditions which place him at high risk for an adverse outcome should he contract the virus. [1]  In addition, Riddick is nearly 73 years old and has served almost 29 years of his sentence.  Riddick also claims he has used the nearly-29 years he has spent in federal prison to better himself by earning "many certificates from rehabilitation programs."  Def.'s Mot. to Reduce Sent., 12, ECF No. 546.  If released, he would live with his son, Charles Riddick, Jr. and his son's wife in Whitehall, PA.  *Id.*, at 14.

The Government opposes Riddick's motion.  Conceding that Riddick's age and congestive heart failure place him at enhanced risk during the pandemic, the Government notes that Riddick has since received two doses of the Pfizer - BioNTech COVID-19 vaccine which mitigates this risk.  It also argues "the unique gravity of his crimes committed over a period of six years while he was already confined to prison, the intent of the sentencing court in imposing a life sentence, and his poor disciplinary, work, and educational history in the past 29 years while incarcerated in this case demonstrates that he has made little to no effort to rehabilitate and that he remains a danger to the community."  Gov't's. Resp. in Opp. to Def's Mot. to Reduce Sent., 1., ECF No. 547.

---

[1] Specifically, Riddick suffers from hypertension, glaucoma, Graves Disease and hypothyroidism, acute coronary insufficiency, chronic swelling (edema) in his lower extremities, esophagitis, and dermatitis.  He also has a history of congestive heart failure and anemia.

2

**LEGAL STANDARDS**

Riddick seeks to avail himself of the remedies available under the "compassionate release"

provisions of 18 U.S.C. § 3582(c)(1)(A):

> **(c) Modification of an imposed term of imprisonment. –** The court may not modify a term of imprisonment once it has been imposed except that –
>
> > **(1)** in any case –
> >
> > > **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
> > >
> > > > **(i)** extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> > > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

The § 3553(a) factors applicable here which must be considered are "the nature and

circumstances of the offense and the history and characteristics of the defendant," and "the need

for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law,

… to provide just punishment for the offense[,] … to afford adequate deterrence to criminal

3

conduct[,] [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A) – (C).

The Sentencing Commission has yet to update its Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A) since passage of the First Step Act which amended § 3582(c)(1)(A) to permit individual defendants to bring compassionate release motions on their own behalf. By its terms, the Policy Statement set forth at U.S.S.G. § 1B1.13[2], is limited to compassionate release motions initiated by the Bureau of Prisons. Hence the Policy Statement is not binding on district courts considering defendant-initiated compassionate release motions, and courts are free to consider other reasons a defendant raises that are not specifically contemplated in the Policy Statement in determining whether extraordinary and compelling reasons exist. *United States v. Andrews*, 12 F. 4th 255, 260 (3d Cir. 2021); *United States v. Bayron*, No. 95-338-1, 2021 U.S. Dist. LEXIS 29846, at *8 (E.D. Pa. Feb. 18, 2021). The Policy Statement, however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore

---

[2] The U.S.S.G. § 1B1.13 Policy Statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent that they are applicable, the court determines that –
>
> **(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

continues to provide guidance in deciding § 3582(c)(1)(A) motions. *Andrews¸* 12 F. 4th at 260. District courts are vested with discretion in their weighing of the §3553(a) factors and determining motions for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Commentary to the Policy Statement provides that extraordinary and compelling reasons may exist where the defendant is either suffering from a terminal illness, or is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n. 1B. Additionally, extraordinary and compelling reasons may exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," *id,* cmt. n.1B, or where the caregiver of a defendant's minor children dies or becomes incapacitated, or a defendant's spouse or registered partner for whom the defendant would be the only caregiver becomes incapacitated, *id.,* cmt. n. 1(C). Finally, the Policy Statement also contains a catchall provision giving "the Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-397 (E.D. Pa. 2020)(quoting U.S.S.G. § 1B1.13 cmt. n.1(D)). Under the Policy Statement, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13 cmt. n.3. The defendant bears the burden of proof by a preponderance of the evidence on motions for compassionate release. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi,* 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

In this case, the record reflects that Riddick submitted an Inmate Request to Staff seeking compassionate release/sentence reduction due to the COVID-19 pandemic in early September, 2020, which was denied by Warden C. Gomez on September 22, 2020.  Riddick filed this motion on January 21, 2021, more than thirty days later and thus has satisfied the administrative pre-requisites to moving for compassionate release established in the statute.

Turning to the question of whether the requisite compelling and extraordinary reasons for early release exist here, the Court takes notice of the fact that COVID-19, which was declared a pandemic in March of 2020, continues to sicken millions of people worldwide.  In the United States, there have been a total of some 53,796,000 diagnosed cases of COVID-19 which have resulted in more than 820,350 deaths to date.  Although some 78% of people 5 years and over having received at least one dose of a COVID-19 vaccine, community transmission throughout the U.S. is currently listed as "high."  www.covid.cdc.gov/covid-data-tracker/#vaccineeffectiveness.

As this Court has previously recognized, "COVID-19 poses a unique challenge to the prison system."  *United States v. Nunez,* 483 F. Supp. 3d 280, 283 (E.D. Pa. 2020).  In response to the pandemic, the federal Bureau of Prisons has modified operations within its facilities to mitigate the risk and spread of COVID-19.  Mitigation measures include restricting and/or limiting visits such that all were either suspended altogether or were non-contact; restricting the number of visitors allowed, and decreasing the length and frequency of visits; mandating testing and masking of all inmates, staff, and visitors; maximizing social distancing; and mandating frequent cleaning of all facilities, daily symptom and temperature checks of inmates, and quarantining of all new inmates.

www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.  The operational status of

each institution is determined based on a number of health indicators, including the level of transmission within each institution and in the surrounding community.  Although mitigation measures have been in place throughout the pandemic, the particular interventions in place at a given institution vary based on the institution's operational status.

www.bop.gov/coronavirus/covid19_status.jsp.

According to the CDC, there are a number of medical conditions which put people at greater risk of adverse outcomes from COVID-19.  These include: "heart conditions like heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension," and "immune-compromised state/weakened immune system." www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.   The most recent medical records provided for Riddick indicate his current diagnoses include several heart conditions: acute coronary insufficiency, congestive heart failure, and hypertension, and Grave's disease, an autoimmune disorder.[3] Riddick also suffers from peripheral vascular disease, reflex esophagitis, glaucoma, hypothyroidism secondary to Grave's disease, dermatitis, constipation, lesions of the oral mucosa, and anomalies of the foot which are suspected to be due to a superficial thrombophlebitis.  Ex. A to Gov't.'s Resp. in Opp. to Mot. for Comp. Rel., ECF No. 548.  Thus, as noted, Riddick suffers from several conditions in the CDC's higher risk categories.

The medical records also reflect, however, that Riddick's conditions are being well-managed in the prison by his current daily medications, which include Aspirin 81 mg, Ferrous Gluconate 324 mg, Latanoprost Ophthalmic Solution .005%, LevoThyroxine Sodium 75 mcg, Lisinopril 10 mg, Omeprazole 20 mg, and Vitamin A & D Ointment.  *Id.*  Riddick has been seen

---

[3] www.niddk.nih.gov.

regularly for follow-up in the medical unit, and there is nothing in his medical records which suggests the care he is receiving is anything other than appropriate. *Id.* Furthermore, as noted, since filing the instant compassionate release motion, Riddick has received two doses of the Pfizer – BioNTech COVID-19 vaccine. Although the vaccines do not prevent all infections, they have been found to provide strong protection from severe disease, hospitalization, and death from COVID-19, including from the Delta and other variants with effectiveness ratings between 85% and 90%. www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/how-they-work.html. The current vaccines are also expected to protect against severe illness, hospitalization and deaths due to infection with the newer Omicron variant. www.cdc.gov/coronavirus/2019-ncov/omicron-variant.html. Finally, recent research indicates adults 65 years old and older who were fully vaccinated with an mRNA COVID-19 vaccine (Pfizer BioNTech or Moderna) had a 94% reduction in risk of COVID-19 hospitalizations. www.cdc.gov/aging/covid19/covid19-older-adults.html.

Riddick is housed at McCreary USP in Pine Knot, Kentucky, which has a total population of 1,433 male inmates. The prison is currently at the Level 3 operational level meaning it is under the most restrictive COVID-19 procedures with most of its normal operations and all visiting suspended until further notice. Presently, there are no COVID-19-positive inmates or staff, and to date, there have been 2 inmate deaths, and 299 inmates and 145 staff have recovered from the disease. www.bop.gov/coronavirus. The Court thus finds Riddick's health to be in no imminent danger of an adverse outcome from COVID-19 under the current management of prison conditions and current management of his medical conditions by the prison health unit. Riddick has therefore not met the extraordinary and compelling threshold to merit compassionate release.

As noted, the Court must also consider the relevant factors outlined in  18 U.S.C. §3553(a). Although Riddick contends he has completed numerous rehabilitation programs leading to his receipt of certificates of completion, and he therefore poses no danger to the community, the Government avers Riddick has "managed to obtain and possess narcotic drugs and alcohol at least 13 times while in federal prison, the latest of which was in 2017," and he "has no history of continuity in any position of prison work."  Gov't.'s Resp. in Opp. to Def.'s Mot. for Comp. Rel., (ECF No. 547), 15-16.  To the contrary, the Government claims Riddick "has spent more time unassigned or on administrative suspension and disciplinary segregation than in employment at all." *Id.,* at 16. Neither Riddick nor the Government has provided copies of transcripts, disciplinary records, or any other documentary or testimonial evidence in support of their respective contentions.  However, it is Riddick who bears the burden of proof.  Although the Court recognizes Riddick has likely changed due to his age and the length of time he has been imprisoned, it cannot find him to be rehabilitated and no longer a threat to society on the basis of this record.

Moreover, the other relevant §3553(a) factors also do not support compassionate release. The reasons behind Judge Van Antwerpen's life sentence were well-founded.  The nature and circumstances of the offense and character and history of this defendant were such that at the time of his sentencing on the federal charges, Riddick had a long history of drug crimes for which he was sentenced to prison multiple times by Pennsylvania state judges.  He committed the crimes for which he was ultimately convicted in this case *while incarcerated* in Lehigh County and recruited some eight others, including his own son and girlfriend, four other inmates and two prison guards to participate in his conspiracy to obtain and distribute large quantities of drugs over a nearly six-year period *in the prison*.  Judge Van Antwerpen quite aptly noted this had the effect of corrupting an entire correctional institution, thereby destroying trust and respect, and effectively

giving Riddick, an inmate, control over the facility.   The life sentence was an appropriate one to reflect the seriousness of the offenses, promote respect and deter future criminal conduct and punish this defendant. §3553(a) (1) – (2)(A) – (C).   Thus, after consideration of the §3553(a) factors and because Riddick is in no serious danger of suffering severe illness or death as a result of COVID-19 even despite his age and medical conditions, the Court finds compassionate relief is not appropriate in this case.  The motion shall therefore be denied.

An Order follows.

BY THE COURT:

/s/ Juan R. Sanchez

_____

Juan R. Sánchez,          C.J.